IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| **ROSE M. HUFFMAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 5:10-00806** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on the Plaintiff's Motion for Remand (Document No. 10.) and Defendant's Motion for Judgment on the Pleadings. (Document No. 12.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 3 and 4.)

The Plaintiff, Rose M. Huffman, (hereinafter referred to as "Claimant"), filed an application for DIB on June 16, 2006 (protective filing date), alleging disability as of November 27, 2004, due to lumbar sprain. (Tr. at 9, 74-78, 87, 92.) The claim was denied initially and on reconsideration. (Tr. at 46-48, 54-56.) On March 1, 2007, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 57.) The hearing was held on January 7, 2008, before the Honorable Charles Boyer. (Tr. at 25-43.) By decision dated January 24, 2008, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 9-24.) The ALJ's decision became the final decision of the Commissioner on April 10, 2010, when the Appeals Council denied Claimant's request for review.

(Tr. at 1-3.) On June 9, 2010, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2008). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2008). The Commissioner must show two things: (1) that the

claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since November 27, 2004, her alleged onset date. (Tr. at 11, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from a severe impairment of her spine. (Tr. at 11, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 12, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for at least light work. (Tr. at 12, Finding No. 5.) At step four, the ALJ found that Claimant could return to her past relevant work as a cutting machine operator, deli worker, or housekeeper. (Tr. at 23, Finding No. 6.) On this basis, benefits were denied. (Tr. at 23, Finding No. 7.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the

record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on April 18, 1953, and was 54 years old at the time of the administrative hearing, January 7, 2008. (Tr. at 28, 74.) Claimant had a sixth grade, or limited education and was able to communicate in English.[1] (Tr. at 28, 91, 100.) In the past, she worked as a cutter, deli worker, housekeeper, waitress, and in food service at a hospital. (Tr. at 23, 29-35, 102-08.)

Claimant's Challenges to the Commissioner's Decision

Claimant first alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in failing to find that Claimant met or equaled Listing 12.05(C).[2] (Document No. 10 at 2-4.) Claimant asserts because she had IQ scores that fell between 60 and 70 and an underlying back impairment, she satisfied Listing 12.05(C). She notes that Ms. Ball opined that "these scores are considered valid as [Claimant] was persistent and exhibited good affect." (Id.) Claimant contends that the ALJ erred in giving these scores little weight, and that by doing so, he was acting as an expert. (Id.)

In response, the Commissioner asserts that Claimant failed to present any evidence of valid IQ scores in the 60 to 70 range. (Document No. 12 at 11.) The Commissioner notes that Ms. Ball did

---

[1] Despite her testimony at the administrative hearing, Claimant reported on her Disability Report - Adult, that she had completed the eighth grade in school. (Tr. at 28, 100.)

[2] Claimant asserts in her Motion that the ALJ failed to find that she met or equaled Listing 12.05(D). (Document No. 10 at 2-3.) In reviewing the record, the Court finds that this was a mistake and that Claimant intended to cite Listing 12.05(C).

not acknowledge that Claimant's IQ scores were valid. (Id.) Rather, Ms. Ball acknowledged that the IQ scores may have been "slightly below optimal ability due to [Claimant's] depressed mood and chronic pain." (Id.) Furthermore, the Commissioner asserts that Claimant failed to demonstrate any deficits in adaptive functioning initially manifested during the development period, as required to satisfy Listing 12.05(C). (Id. at 9-10.)

Claimant also alleges that the ALJ's decision is not supported by substantial evidence because he failed to fulfill his duty to consider a change in age within six months of such change. (Document No. 10 at 4-5.) Claimant asserts that she reached her 55th birthday on April 18, 2008, or less than 100 days after the date of the ALJ's decision. (Id. at 5.) Claimant contends that as an individual of advanced age, she would have satisfied the grids if her skills were not transferable. (Id.)

In response, the Commissioner asserts that Claimant appears to address 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(c), which provides that an individual of advanced age is considered disabled when she can no longer perform her past relevant work, which consisted of unskilled work experience, and who had only skills not transferable to a significant range of semi-skilled or skilled work. (Document No. 12 at 11-12.) The Commissioner asserts however, that the ALJ never encountered this issue because he determined at step four that Claimant could return to her past relevant work. (Id. at 12.) The issue of transferability of skills, therefore, was irrelevant, and Claimant's argument is without merit. (Id.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

5

Analysis.

1. Mental Retardation Under Listing 12.05(C).

Claimant first alleges that the ALJ erred in failing to find that she met or equaled Listing 12.05(C). (Document No. 10 at 2-5.) "The Listing of Impairments . . . describes, for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. §§ 404.1525(a), 416.925(a) (2008); see Sullivan v. Zebley, 493 U.S. 521, 532, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990). "For a claimant to qualify for benefits by showing that h[er] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [s]he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." See id. at 531 (emphasis in original).

Section 12.05 of the Listing of Impairments provides criteria for determining whether an individual is disabled by mental retardation or autism. "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (2008). The required level of severity for Listing 12.05 is satisfied when any one of the four following requirements is satisfied:

> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

OR

> B. A valid verbal, performance, or full scale IQ of 59 or less;

OR

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a

> physical or other mental impairment imposing an additional and significant work-related limitation or function;
>
> OR
>> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>>> 1. Marked restriction of activities of daily living; or
>>> 2. Marked difficulties in maintaining social functioning; or
>>> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>>> 4. Repeated episodes of decompensation, each of extended duration.

The Fourth Circuit has held that a claimant's additional "severe" impairment qualifies as a significant work-related limitation for the purpose of listing § 12.05C. Luckey v. U.S. Dept. of Health & Human Serv., 890 F.2d 666 (4th Cir. 1989) (per curiam). A "severe" impairment is one "which significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c) (2008). In Luckey, the Court ruled that:

> Luckey's inability to perform his prior relevant work alone established the significant work-related limitation of function requirement of § 12.05C. Further, the Secretary has defined a severe impairment or combination of impairments as those which significantly limit an individual's physical or mental ability to do basic work activities. The Secretary's finding that Luckey suffers from a severe combination of impairments also establishes the second prong of § 12.05C.

Id. at 669 (internal citations omitted).

As described in the introduction to the Listing, one of the essential features of mental retardation is significant deficits in adaptive functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; See also, The Merck Manual of Diagnosis and Therapy 2259 (Mark H. Beers, M.D. & Robert Berkow, M.D., eds., 17th ed. 1999) (defining mental retardation as "significantly subaverage intellectual quotient with related limitations in two or more of the following: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional

7

academics, leisure, and work.").[3] Also, according to the Diagnostic and Statistical Manual of Mental Disorders, 4th Edition, ("DSM-IV")(1994), one of the essential features of mental retardation is significant deficits in adaptive functioning. Id. at 39-40. Adaptive functioning refers to how effectively an individual copes with common life demands and how well he meets the standards of personal independence expected of someone in his particular age group, sociocultural background, and community setting. Id. at 40. Thus, the Regulations make clear that Listing 12.05C is a three-part test. The Introduction to section 12.00 of the Listings, section 12.00A, was revised in 2000 to state as follows:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A; 65 Fed. Reg. 50, 746, 50, 776; see also Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001) (detailing change).

The record in this case disclosed that on December 17, 2007, Claimant underwent a psychological evaluation by Katherine Ball, M.S., a licensed psychologist, at the request of Claimant's counsel, who was "assisting [Claimant] in her efforts to obtain Social Security Disability Benefits." (Tr. at 351-55.) Ms. Ball diagnosed Claimant with borderline intellectual functioning, dysthymic disorder, and back injury with chronic pain. (Tr. at 355.) Wide Range Achievement

---

[3] "In 1992 the American Medical Association on Mental Retardation changed the definition of mental retardation to reflect adaptation to the environment and interaction with others by a person with limited intellectual functioning. Classification based on IQ alone (mild, 52 to 68; moderate, 36 to 51, severe, 20 to 35; profound, less than 20) has been replaced to that based on level of support needed." The Merck Manual of Diagnosis and Therapy 2259 (Mark H. Beers, M.D. & Robert Berkow, M.D., eds., 17th ed. 1999).

Testing ("WRAT-4") indicated that Claimant's word reading skills were at the 6.5 grade level, her sentence completion skills were at the 8.2 grade level, her spelling skills were at the 9.3 grade level, and her math computation skills were at the 4.0 grade level. (Tr. at 354.) Ms. Ball opined that "these scores are probably the best indicator of [Claimant's] actual ability as they are what would be expected given her reported educational history." (Id.) Ms. Ball considered these scores valid as Claimant "was persistent and exhibited good effort." (Id.) Claimant's IQ testing on the WAIS-III, demonstrated a verbal IQ of 60, a Performance IQ of 70, and a full scale IQ of 65. (Tr. at 353-54.) Ms. Ball noted that these scores fell within the mild mental retardation range of intellectual functioning. (Tr. at 354.) She did not indicate whether the IQ scores were valid. (Id.) Nevertheless, she opined that the "IQ scores may be slightly below optimal ability due to [Claimant's] depressed mood and chronic pain, but are consistent with reported academic and vocational work histories, and even optimal scores would not be expected above Borderline levels." (Id.)

In his decision, the ALJ summarized Ms. Ball's evaluation and gave her report little weight, and consequently considered Claimant's IQ scores as invalid. (Tr. at 21.) The ALJ noted that Claimant did not allege a mental impairment as a disabling condition. (Id.) He also noted that Claimant's various medical providers failed to report significant signs of a mental impairment and failed to refer her to a mental health specialist for evaluation or treatment. (Id.) Furthermore, Claimant was not hospitalized or treated for any mental impairment. (Id.) The ALJ noted that Ms. Ball's evaluation was conducted at Claimant's counsel's request. (Id. at 21-22.) The ALJ did not refer specifically to Listing 12.05. Nevertheless, the Court finds any error that the ALJ may have committed in not considering specifically any mental impairment under Listing 12.05 is harmless. Claimant contends that she met the requisite IQ scores for Listing 12.05(C), but she failed to allege that she had any adaptive deficits in functioning prior to the age of 22. Undoubtedly, Claimant had

9

a limited education. However, there was no indication that she completed special education classes in school. Ms. Ball found that Claimant was capable of managing her finances and Claimant asserted that she managed her own money. Claimant raised children and assisted in the care of her grandson and she was able to drive her car, and drove herself to Ms. Ball's evaluation. Furthermore, Claimant was able to work several jobs over a number of years, including working as a cashier, which required running a cash register.

Additionally, it is not clear that Ms. Ball's IQ scores were considered valid. Ms. Ball opined that Claimant's IQ scores were "slightly below optimal ability." These scores were the only ones of record. Consequently, the Court finds that Claimant failed to establish deficits in adaptive functioning prior to age 22 and valid IQ scores. Accordingly, the Court finds that Claimant's argument is without merit.

2. <u>Borderline Age Situation</u>.

Claimant also alleges that the ALJ's decision is not supported by substantial evidence because he failed to consider her change in age within 100 days from the date of his decision. (Document No. 10 at 4-5.) The ALJ found that Claimant was not disabled at step four of the sequential analysis and found that she could return to her past relevant work. The ALJ therefore, did not have to consult the grids to determine whether Claimant was able to perform other forms of substantial gainful activity, considering her remaining physical and mental capacities and claimant's age, education, work experience, skills, and physical shortcomings. 20 C.F.R. § 404.1520(f) (2006). At step five, one way that the Commissioner can meet this burden is through the use of the grids. The Regulations establish "grids" which "take administrative notice of the availability of job types in the national economy for persons having certain characteristics, namely age, education, previous work experience, and residual functional capacity." <u>Grant v. Schweiker</u>, 699 F.2d 189, 191-92 (4th Cir. 1983); <u>see generally</u> 20

C.F.R. Chapter III, Pt. 404, Subpt. P, App.2, §§ 200.00-204.00 (2008). Each grid considers the strength or "exertional" component of a claimant's disability in determining whether jobs exist that claimant could perform in light of the vocational factors. Grant, 191-92; 20 C.F.R. Chapter III, Pt. 404, Subpt. P, App.2, §§ 200.00-204.00 (2008). In a case where the claimant has only exertional impairments, the grids may be applied and vocational expert testimony is not required. See Hays v. Sullivan, 907 F.2d 1453, 1458 (4th Cir. 1990).

It appears that Claimant purports to assert that she met § 202.00(c), which indicated that when an individual of advanced age can no longer perform past relevant work and had a history of unskilled work or only skills not readily transferable to a significant range of semi-skilled or skilled work, then the individual is found disabled. The ALJ was not required to consult the grids however, because he determined at step four that Claimant was capable of performing past relevant work. Accordingly, the Court finds that Claimant's argument is without merit and that substantial evidence supports the ALJ's decision.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Remand (Document No. 10.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 12.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court..

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 30, 2011.

R. Clarke VanDervort
United States Magistrate Judge